## A. J. Hammer, Plaintiff-Appellant, v. Jefferson Oil & Gas Corp., et al., Defendants-Appellees.

### Gen. No. 61–M–4.

Fourth District.

November 26, 1962.

Kenneth A. Green, of Mattoon (Thomas J. Logue, of counsel, of Mattoon), for appellant.

Carter Harrison, of Benton, and John E. Jacobsen, of Mt. Vernon, for appellees.

SCHEINEMAN, P. J.

This is an appeal from a judgment entered upon a directed verdict in favor of defendants. The action arises out of a claim for damages incurred by plaintiff when the ground upon which he had set up his oil drilling rig caved into a coal mine and further drilling had to be abandoned.

Plaintiff contends that under the terms of his lease the well was to be drilled through a coal pillar in the mine and that the defendants negligently designated a drilling site which missed the pillar, causing the ground to cave in about ten feet in depth over an area approximately twenty-five feet in diameter.

Jefferson Oil & Gas owned the oil on the tract of land, but not the coal. It had executed an oil lease which plaintiff acquired by assignment. The lease contained the following:

"D. Lessee agrees that any holes drilled pursuant to this lease shall be in one or more of the coal pillars in lessor's mine and lessee shall not commence drilling at any location until lessor shall have approved the site as being one located over a coal pillar."

There was also a provision obligating the lessee to pay $100 to the owner of the coal for each well drilled as compensation for coal left in place. At the time of the cave-in the coal mine was not in use and was closed and sealed.

The complaint alleged, among other things, that the defendants, through their agent, designated the location for the well; that plaintiff had no choice in the selection; that plaintiff secured the services of a surveyor, an employee of Zeigler Coal Company, the other

defendant, and paid him $100 to stake out the location designated by defendants; that defendants negligently and carelessly and improperly selected a location under which no coal pillar existed.

The answer raised a number of issues and also asserted as a special defense that another coal company, not a party to this suit, had operated the mine for a time, and it had made the maps thereof. "Neither these defendants nor their agents and employees had anything to do with the making of said surveys or maps." Also, that they had no information about the situation in the mine other than that shown by these maps and surveys.

■ ■   We find that plaintiff's assertion that defendants had a duty to select the location for a well is not supported by any evidence. The only reference to their obligation in this respect is the quoted portion of the lease which prohibits drilling until the lessor has approved the site. The verb, "approved," does not mean to select. It means, according to ordinary dictionary definition, "to confirm, ratify, sanction, or consent to some act or thing of another." This definition has been followed in a number of judicial opinions, including an Illinois case as follows:

> "The words, ratify, approve, and confirm, are of synonymous import and are defined to make valid or legally operative. . . . The significant point is that these words are not to be construed as in themselves serving a dispositive or donative purpose but as approving an existent contract, grant, or donation." Continental v. Art Institute, 341 Ill App 624.

The effect of this provision is to give to the lessor, Jefferson Oil & Gas, a right of approval of a selected site. There is no obligation to select the site. And the other defendant, Zeigler Coal, had no contractual re-

lation with the plaintiff upon which even to make an argument about a duty to select.

The plaintiff testified that he had asked an official of Zeigler Coal Co. about the location of coal pillars and was told that there were maps and surveys in the possession of a Mr. Mercer, who was superintendent of a mine near another town known as the Buckhorn Mine. The evidence does not disclose any connection between the Buckhorn Mine and either of the defendants, although it appears that plaintiff believed there was.

The plaintiff went to Mr. Mercer, who introduced him to Mr. Deason as his engineer. The plaintiff employed Mr. Deason to survey and mark a location for drilling and paid him $100 for his services. Plaintiff thought that this Deason had some connection with the defendant Zeigler. The auditor and accountant for Zeigler Coal & Coke Company testified under Section 60 that he has charge of the records of that company and that neither Deason nor Mercer was an employee of the Zeigler Company. This testimony was not refuted, nor impeached.

■ It is, therefore, to be observed that neither of the defendants had anything to do with the selection of the drilling site and the man who actually did make the selection had been hired for that purpose by the plaintiff. If he was guilty of any negligence, it is not chargeable to either of the defendants.

Further argument is based on the fact that plaintiff paid the $100 for the coal left in place. He sent his payment to his lessor, the oil company, and from there it was forwarded to the Zeigler Coal Company, the other defendant, as owner of the coal. The requirement in the lease for this payment of $100 for coal said nothing about selecting or approving the location of a well.

Zeigler accepted the payment and promptly notified the Bureau of Mines and Minerals the drilling was approved. Perhaps the proximity of these two events

139

misleads plaintiff as to Zeigler's contractual status. The evidence failed to disclose any contractual duty on this defendant to plaintiff or anyone else, other than the duty to leave the quarter acre of coal in place, which would be implied from its acceptance of the payment.

When the plaintiff talked to an official of Zeigler Company and was told that a Mr. Mercer had the maps of the coal mine, the plaintiff assumed that Mercer was an employee of the Zeigler Company, but he failed to produce any evidence to that effect, and as previously noted there was evidence to the contrary.

The plaintiff's assertion that a defendant had the duty to select the location of a drilling site is disproved by the lease contract itself. His further assertion that a defendant, through its agent, did in fact make the selection, is not supported by any evidence. It follows that plaintiff had no case against either defendant, and the directed verdict was proper. The judgment is affirmed.

Judgment affirmed.

CULBERTSON and HOFFMAN, JJ., concur.