WOOD COUNTY and others, Respondents, v. BOARD OF VOCATIONAL, TECHNICAL AND ADULT EDUCATION, Appellant.

*No. 318.  Argued September 5, 1973.——Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 617.)

608

For the appellant there were briefs by *James A. Urdan* and *Steven R. Duback,* attorneys, and *Quarles, Herriott, Clemons, Teschner & Noelke* of counsel, all of Milwaukee, and oral argument by *Mr. Urdan.*

For the respondents there was a brief by *Cole, Conway & Brazeau,* attorneys, of Wisconsin Rapids; and *Lawrence R. Nash,* Wood county corporation counsel, and *Kenneth M. Hill,* Wisconsin Rapids city attorney, of counsel; and oral argument by *John A. Cole.*

WILKIE, J. This entire controversy pertains to the adjudication of the extent of the authority of the board to order the questioned merger of Districts 14 and 15. As we view it, two issues are involved:

1. Did the board's power to order alterations in vocational districts include the power to merge those districts?

2. If so, did the board have statutory authority on June 20, 1972, to order the merger of those districts on its own initiative, or was the power limited to approving or disapproving requests for alterations from the local district boards?

After the board had performed the function of assigning all vocational territory to districts under sec. 41.155, Stats. 1965, all prior to July 1, 1970, which authority we affirmed in the *West Milwaukee Case,*[1] the authority to accomplish alterations in the districts was spelled out under sec. 38.155 (3) (a), (b), and (c) of the Wisconsin Statutes of 1969. Considering the context in which the

---

[1] *West Milwaukee v. Area Board Vocational, Technical and Adult Education* (1971), 51 Wis. 2d 356, 187 N. W. 2d 387.

word "alter" is used, we are convinced that the word has a meaning broad enough to include the merger of whole districts. It was conceded by the respondents at oral argument that an alteration which would accomplish the attachment of one whole district to the other, except for a small remnant, would be authorized under the questioned language. We think the total merger would be equally empowered to save the statutory language from an interpretation that would accomplish an absurd result.[2]

In *School District v. Callahan*,[3] this court held that the discretion to determine whether districts shall be "altered by consolidation or otherwise" could be delegated to the state superintendent. This indicates that "alter" was given a broader meaning synonymous with change and including consolidation or merger.

Respondents cite *Black River Improvement Co. v. Holway* [4] to support their position that our court has accepted a narrow interpretation of the word "alter." There this court said "To alter is to make different, without destroying identity; to vary, without entire change." This definition was in the context of the effect of a constitutional prohibition against enacting any special or private laws for granting corporate powers or privileges. Another constitutional provision allowed special acts to be altered. Thus, "alter" had to be construed not to include such a drastic change that a "new" corporation resulted. However, the word "alteration" here and in the context of sec. 38.155, Stats. 1969, must be given a definition that is consistent with the obvious intention of the legislature to permit the broadest types of adjustments in district boundaries including consolidation or merger.

[2] *Wisconsin Valley Improvement Co. v. Public Service Comm.* (1960), 9 Wis. 2d 606, 101 N. W. 2d 798; *State ex rel. Reynolds v. Nusbaum* (1962), 17 Wis. 2d 148, 115 N. W. 2d 761.

[3] (1941), 237 Wis. 560, 561, 297 N. W. 407.

[4] (1894), 87 Wis. 584, 590, 59 N. W. 126.

On May 12, 1972, the attorney general rendered an opinion interpreting the present sec. 38.06 (2) (a), Stats., which reads: "Upon order of the board, the boundaries of a district may be altered." The question to be answered was whether the board could order the creation of a new district by merging one district with another. The attorney general concluded that "alter" does not include "merger." Alteration was stated to imply a change in the boundary between two districts which continue to exist.

Although the attorney general's opinion is entitled to whatever persuasive value it may have,[5] we are convinced that his interpretation would bring about an absurd result and is contrary to the broad powers of the board with respect to organization of vocational districts. This opinion was given on May 12, 1972, so that it was not rendered after the passage of a statute following which there has been a reasonable time for the legislature to take some action indicating acquiescence by the legislature in that opinion.[6]

Although we conclude that the power to alter as contained in sec. 38.155 (3) (a), Stats. 1969, includes the power to merge vocational districts, in this instance the board did not have authority to act as it did on its own initiative.

This follows from the language of the statute itself and from the entire legislative history of that grant of authority. We are dealing here with sec. 38.155 (3) (a), Stats. 1969, which states:

"The boundaries of a district shall not be altered unless the alteration is approved by the board of vocational, technical and adult education."

---

[5] *Union Free High School District v. Union Free High School District* (1934), 216 Wis. 102, 256 N. W. 788; *Wisconsin Valley Improvement Co. v. Public Service Comm., supra,* footnote 2; *Green v. Jones* (1964), 23 Wis. 2d 551, 128 N. W. 2d 1.

[6] *See* footnote 5, *supra.*

There is no statutory definition of the word "approved." In the absence of such a definition, the common and generally understood meaning of a word should be applied in the construction of a statute.[7] The ordinary and common meaning of a word may be established by the definition of a recognized dictionary.[8] Also the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense.[9] The preferred meaning of the word "approved" appears to be that contended for by the respondents. Black's Law Dictionary defines "approve" as:

"To be satisfied with; to confirm, ratify, sanction, or consent to some act or thing done by another; to sanction officially; to ratify; to confirm; to pronounce good; think or judge well of; admit the propriety or excellence of; be pleased with." [10]

There are any number of cases which will support the definition that "approve" means to pass judgment on the actions of others. For example: ". . . 'approved,' does not mean to select. It means, . . . 'to confirm, ratify, sanction, or consent to some act or thing of another.' " [11]

A word can have different meanings in different contexts. Sec. 38.155 (3) (b), Stats. 1969, details the procedure that local units must take to effectuate desired changes in district boundaries. Actions begun by local units are subject to final acceptance or rejection by the board. It is quite logical that the word "approved" in par. (a) refers to the approval power in par. (b). The

[7] *State (Board of Regents) v. Madison* (1972), 55 Wis. 2d 427, 433, 198 N. W. 2d 615.

[8] *Estate of Nottingham* (1970), 46 Wis. 2d 580, 588, 175 N. W. 2d 640.

[9] *A. O. Smith Corp. v. Department of Revenue* (1969), 43 Wis. 2d 420, 429, 168 N. W. 2d 887.

[10] Black's, *Law Dictionary* (4th ed.), p. 132.

[11] *Hammer v. Jefferson Oil & Gas Corp.* (1962), 38 Ill. App. 2d 136, 138, 186 N. E. 2d 667.

board argues that this would render par. (a) super-fluous. This is not true. Par. (a) would emphasize that no one but the board has final authority. Par. (b) does not indicate what occurs if approval is not granted. Even if par. (b) can be considered complete in itself and therefore par. (a) is superfluous, this court can only attempt to construe a statute so that all parts have a function and meaning. If the legislature has created redundancies, it is not up to this court to create functions for such parts.

Sec. 38.155 (3), Stats., had its origins in sec. 41.155 (5), Laws of 1957, ch. 224.[12] The 1965 amendment which created the section in controversy gave the board the power between 1965 and July 1, 1970, to establish a master plan and to act to include all parts of the state in the districts designated in the master plan. The board could act regardless of previously existing districts because the statute provided they would cease to exist when the new districts were created. The board had unlimited power under this section, but the power would cease on July 1, 1970, as provided by the statute.

Sec. 41.155, Stats. 1965, was repealed and re-created by Assembly Bill 501, Laws of 1965, ch. 292, which bill originally provided as follows:

"41.155 . . .
"(3) (a) The boundaries of a district shall not be altered until the district has been in operation at least 2 years.
"(b) The governing body of any municipality, county or school district operating a high school may request the state board to detach its territory from a district and attach it to another district. If the transfer is approved by the governing body of both districts involved, the state board may approve it. If the governing body of either district disapproves the transfer, the state board shall determine the case on its merits. [Same language as finally adopted.]

---

[12] Renumbering of ch. 41 to ch. 38 was made by sec. 275, ch. 276, Laws of 1969.

"(c) All changes in boundary lines shall take effect on July 1. No action to change boundaries identical to a previous unsuccessful action shall be made unless 2 years have elapsed since the previous unsuccessful action."

Substitute amendment 2A to Bill 501A added the following clause to proposed sub. (3) (a):

"except that eligible units may be included prior to July 1, 1970, upon voluntary action by the governmental units involved."

Sub. (3) (a) was finally amended to read:

"The boundaries of a district shall not be altered unless the alteration is approved by the state board of vocational, technical and adult education."

Sub. (3) (c) was amended by striking out the second sentence.

The trial court concluded that it was clear "from the foregoing that the municipalities and the school districts involved were concerned with their right to initiate and propose alterations in districts once a master plan had been adopted."

Sec. 41.155 of the new statute gave the board power to create a master plan for the state and to act by July 1, 1970, to include all areas of the state within vocational districts. Prior to that time the governing body of any county, municipality or school district operating a high school could elect to be constituted a vocational district if the state board agreed. The two-year restriction on alterations would have hindered voluntary reorganization as contemplated by the new law and that appears to be the reason for substitute amendment 2A. The elimination of the two-year restriction on boundary changes, as in the final version, made such an exception unnecessary. We do not think the trial court was warranted in concluding these changes evidenced a concern for alteration after the master plan was adopted. Rather the amend-

ments evidenced concern for not hindering voluntary changes within the period up to July 1, 1970, which would be hampered by the original two-year restriction.

The phrase "unless the alteration is approved by the board of vocational, technical and adult education" in sec. 38.155 (3) (a), Stats. 1969, seems to have been added to remove the two-year restriction on successive alteration requests and thus give maximum opportunity to local units for voluntary inclusion in the new master plan in the districts with which they would prefer to be associated. The amendments do not show an intent to make clear that the board has power to make alterations on its own motion.

In the 1971 legislative session Senate Bill 434 repealed and re-created the statute here in controversy to take effect on July 1, 1972. The bill was enacted as ch. 154. Sec. 38.155 (3) (a) is now sec. 38.06 (2) (a), and provides:

"(2) (a) Upon order of the board, the boundaries of a district may be altered. Changes in boundary lines shall take effect on the July 1 next succeeding the date of such approval."

It seems to be accepted by both respondents and appellant, and the trial court that this language gives the board the power to order alterations on its own initiative —the power which the board contends it had under the previous wording also. We are not convinced that this is a correct assumption even given the positive nature of the language. It is generally presumed that a revisor's or revision bill (as this was) does not change the meaning of a statute even if it is reworded and rephrased in the reorganization.[13] However, in *Welch v. Fiber Glass Engi-*

---

[13] 1A Sutherland (Sands), *Statutory Construction* (4th ed.), p. 327, sec. 28.10; *Gray v. Wisconsin Telephone Co.* (1966), 30 Wis. 2d 237, 248, 140 N. W. 2d 203.

*neering, Inc.,*[14] it was held that where an extensive revision occurred after careful study by the legislative council, and was accomplished by repeal and re-creation, the presumption would no longer be applicable. This presumption is usually used in aid of construction of the new statute, and not to reason backwards to aid construction of the former statute. In the *Welch Case,* however, the new meaning of the revised section was applied to the former statute for the sake of uniformity.

Unlike the *Welch Case,* however, the words of the two corresponding sections here involved (sec. 38.155 (3) (a) and sec. 38.06 (2) (a)) are not identical. It is improper to use an apparent change in meaning to construe earlier language in a preceding statute which does not easily lend itself to that interpretation.

The board argues that its interpretation of its powers under the statute is entitled to weight because it had a hand in drafting the statute and it is charged with carrying out the legislative purpose. However, the rule that great weight is given to the practical interpretation of the officers charged with enforcement of a statute, does not apply unless the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts.[15] Also, an administrative interpretation is not entitled to be given weight if it is inconsistent with unambiguous statutory provisions.[16]

Previous statutes dealing with the reorganization of primary and secondary education districts have clearly specified what actions may be taken on the motion of the reorganization authority itself. Sec. 40.30, Stats. 1939, states:

[14] (1966), 31 Wis. 2d 143, 142 N. W. 2d 203.

[15] *Milwaukee County v. Schmidt* (1971), 52 Wis. 2d 58, 187 N. W. 2d 777.

[16] *Transamerica Financial Corp. v. Department of Revenue* (1972), 56 Wis. 2d 57, 67, 201 N. W. 2d 552.

"(1) . . . Upon the filing of a petition by an elector or upon their own motion town and village boards and councils of cities of the second, third and fourth class may, by order, create, alter, consolidate or dissolve school districts. . . . The state superintendent is authorized, on his own motion, by order to attach districts with valuations of less than one hundred thousand dollars to contiguous districts."

The same provision for action upon petition of an elector or its own motion is provided in secs. 40.03 and 40.06, Stats. 1955. This indicates that if the board was to be given authority to act on its own motion, the legislature would have used direct language to that effect as it did in other previous statutes involving school district reorganization.

The numerous cases cited by the appellant which have upheld the constitutionality of broad grants of power to school authorities are not controlling here because the question before us is not whether a grant is constitutional, but what power was granted by the terms of the statute. In *West Milwaukee v. Area Board Vocational, Technical and Adult Education,*[17] this court upheld the legislative policy determination to provide and finance vocational education on an area basis, and to delegate creation of districts to the board. This case did not, however, construe what power was delegated to the board to alter districts after the master plan became effective on July 1, 1970.

Although the board acted on its own initiative in ordering the merger of Districts 14 and 15, in the case of the earlier ordered merger of Districts 6 and 7 the board acted following petitions from the affected districts.

We conclude that the order of June 20, 1972, directing the merger of Districts 14 and 15 is void.

*By the Court.*—Judgment affirmed.

[17] *Supra,* footnote 1.