Thomas J. CRAWFORD, Plaintiff-Appellant,†

v.

Wayne F. WHITTOW, individually, and as the Treasurer of the City of Milwaukee, Gregory Gorak, individually and as an alderman employee of the City of Milwaukee, Richard Spaulding, individually and as an alderman employee of the City of Milwaukee, Daniel Ziolkowski, individually and as an alderman employee of the City of Milwaukee, and the City of Milwaukee, a municipal corporation organized under the laws of the State of Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 84–1098. Submitted on briefs January 8, 1985.— Decided February 8, 1985.*
(Also reported in 366 N.W.2d 155.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas J. Crawford, Esq.* (appearing *pro se*) of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Grant F. Langley,* city attorney, with *Scott G. Thomas,* assistant city attorney, of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J.   Thomas J. Crawford (Crawford) filed a complaint against the City of Milwaukee (City), three Milwaukee aldermen and the city treasurer alleging that they violated sec. 11.33, Stats., by enclosing a "special message" in the property tax bills sent to Milwaukee homeowners.   Crawford appeals the trial court's dismissal of the complaint for failure to state a claim upon which relief could be granted.[1]  We affirm.

At a November 10, 1983, meeting of the Milwaukee Common Council Committee on Public Information (committee), a representative of Milwaukee mayor Henry W. Maier asked that the committee approve the distribution of a "special message" to be included with property tax bills.   The respondents in the instant case, aldermen Daniel Ziolkowski (Ziolkowski), Gregory Gorak (Gorak) and Richard Spaulding (Spaulding), were all members of the committee and were present at the meeting.

The enclosure was titled "A Special Message About Your Tax Bill From Mayor Henry W. Maier and the Milwaukee Common Council . . . ."  The message explained that "circumstances beyond our control" resulted in a 1984 tax increase and attributed the higher taxes to increased spending by the state of Wisconsin.   The message also noted that the amount of shared revenue given Milwaukee by the state for property tax relief had been reduced.   The message suggested that concerned taxpayers use a toll free number to call the governor or their state legislators.

[1] Sec. 802.06(2)(f), Stats.

The committee approved the inclusion of the message with the tax bills which were to be mailed on December 14, 1983. Crawford, proceeding *pro se* in his capacity as a citizen and a state representative, secured a temporary restraining order on December 14, which enjoined city treasurer Wayne F. Whittow (Whittow) from mailing the tax bills with the message. Crawford alleged that because December 1 was the first date to circulate nominating papers for the offices of mayor, city attorney, treasurer, comptroller and aldermanic offices, the committee was prohibited by sec. 11.33, Stats., from using public funds to mail the message. All the respondents in the instant appeal were up for reelection and began circulating nomination papers on December 1.

The parties disagree over whether the city treasurer had notice of the restraining order, but Whittow was not served with the order. The tax bills with the messages were mailed the afternoon of December 14. Crawford filed a complaint alleging violations of sec. 11.33, Stats., and seeking that the City be reimbursed for the cost of printing and distributing the "special message." The trial court dismissed the complaint for failure to state a claim, holding that the complaint was deficient because the message was not distributed for "political purposes" as defined in sec. 11.01(16), Stats., and because it did not expressly advocate the election or nomination of any individual. Crawford appeals.

In testing the sufficiency of a complaint, the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true.[2] A complaint should be dismissed as legally insufficient only if it is quite clear that under no circumstances can the plaintiff recover.[3]

---

[2] *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182, 186 (1982).

[3] *Id.*

Section 11.33, Stats., provides as follows:

No person elected to state or local office may use public funds for the cost of materials or distribution for 50 or more pieces of substantially identical material after the first day for circulation of nomination papers as a candidate for national, state or local office, until after the date of the election or after the date of the primary election if such person appears as a candidate on a primary election ballot and is not nominated. This section does not apply to answers to communications of constituents.[4]

The interpretation of a statute involves a question of law.[5] We owe no deference to the trial court's conclusions of law. In interpreting a statute our first recourse is to the language of the statute itself, and if the language of the statute is unambiguous, we may not resort to extrinsic aids for statutory construction.[6] The test of statutory ambiguity is whether the statute is capable of being construed in two different ways by reasonably well-informed persons.[7]

With the above principles in mind, we conclude that sec. 11.33, Stats., is ambiguous. This section could be construed to mean that a public official may not distribute fifty or more pieces of *any* material once the date for circulation of nomination papers arrives. Such an interpretation would not allow elected officeholders to perform day-to-day duties such as circulation of memos, issuance of paychecks and other necessary tasks. Section 11.33 could also be interpreted as prohibiting dis-

---

[4] Sec. 1w, 1983 Wis. Act 27 (effective July 2, 1983). All references in the opinion are to this amended version of the statute.

[5] *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983).

[6] *Foerster, Inc. v. Atlas Metal Parts Co.*, 105 Wis. 2d 17, 22, 313 N.W.2d 60, 62 (1981).

[7] *Id.*

tribution of materials for political purposes, much in the manner as the attorney general and state elections board have interpreted the section.[8] Because of these conflicting interpretations, we conclude that sec. 11.33 is ambiguous.

Crawford argues that the trial court erred by interpreting sec. 11.33, Stats., to include the definition of "political purposes" contained in sec. 11.01(16), Stats., which says in pertinent part:

An act is for "political purposes" when it is done for the purpose of influencing the election or nomination for election of any individual to state or local office, or for the purpose of influencing the outcome of any referendum. . . .
(a) Acts which are for "political purposes" include but are not limited to:
1. The making of a communication which expressly advocates the election or defeat of a clearly identified candidate or the passage or defeat of a referendum.

Where one of several interpretations of a statute is possible, the court must ascertain legislative intent from the language of the statute in relation to its context, subject matter, scope, history and object intended to be accomplished.[9] The entire section and related sections of a statute are to be considered in a statute's interpretation.[10] The policy of ch. 11, Stats., is to enable candidates to have an equal opportunity to present their programs to the voters.[11] It would be obviously unfair to allow incumbents to use public funds to distribute political materials. Although the phrase "political pur-

---

[8] See 69 Op. Att'y Gen. 260, 263 (1980); Op. El. Bd. 78–12 (1978).

[9] In re Halsted, 116 Wis. 2d 23, 29, 341 N.W.2d 389, 392 (1983).

[10] State v. Phillips, 99 Wis. 2d 46, 50, 298 N.W.2d 239, 241 (Ct. App. 1980).

[11] Sec. 11.001, Stats.

poses" is not used in sec. 11.33, Stats., the manifest intent behind ch. 11 dictates that this phrase, as defined in sec. 11.01(16), Stats., shold apply to the distribution of materials by an elected official as described in sec. 11.33. Limiting the prohibition of sec. 11.33 to materials distributed for political purposes, as opposed to all materials, is consistent with the purposes of ch. 11. Such a reading also avoids placing undue restrictions on the performance of incumbents' official duties and on their nonpolitical distribution of notices, checks or memos.

Crawford also argues that the trial court erred in holding that the political purposes standard of sec. 11.01 (16), Stats., requires "express advocacy" of the election or defeat of a clearly identified candidate in order for the complaint to state a claim under sec. 11.33, Stats. The trial court relied on an opinion of the attorney general in reaching the conclusion that "express advocacy" was required by sec. 11.33.

We do not agree that "express advocacy" must be alleged in order to state a claim under sec. 11.33, Stats. Although the allegation of "express advocacy" clearly would state a claim under sec. 11.33, we believe that a lesser standard than express advocacy is sufficient to state a claim under this section.

The trial court relied on 65 Op. Att'y Gen. 145 (1976) which dealt with the effect of the United States Supreme Court's decision in *Buckley v. Valeo*,[12] on the campaign financing provisions of ch. 11, Stats. In *Buckley,* the Court held that regulation of political activity by imposing expenditure limits on candidates and contributors was impermissible.[13] The court also held that a narrow definition of political activity was necessary to protect the constitutional freedoms of speech and association

[12] 424 U.S. 1 (1976).
[13] *Id.* at 41–45.

exercised in campaign spending. The narrow standard enunciated for political activity subject to regulation was the "express advocacy" of the election or defeat of a particular candidate. In response to *Buckley,* the attorney general recommended that the "express advocacy" standard be applied to all phases of political activity regulated by ch. 11. Opinions of the attorney general are entitled to whatever persuasive value they may have.[14]

By invalidating campaign spending limits, *Buckley* sought to protect political candidates' and contributors' constitutional freedoms of expression and speech, but the same concerns are not at issue in sec. 11.33, Stats. Section 11.33 prohibits the use of state funds by incumbents who distribute fifty or more copies of material after the date for filing nomination papers. This section seeks to equalize the election process by limiting the unfair use of state funds by officeholders. The section does not impinge upon officeholders using their own or donated funds for political purposes, only upon the use of state funds. The constitutional freedoms at issue in *Buckley* and discussed in the attorney general's opinion, which was relied on by the trial court, do not come into play in sec. 11.33. The purpose of sec. 11.33 would be thwarted by requiring express advocacy as the threshold level of political activity. We hold that sec. 11.33 prohibits the use of state funds for "political purposes," which is a lesser standard than "express advocacy," and that a complaint may be stated under sec. 11.33 by alleging that state funds were used to distribute materials for political purposes.

The next question is whether the special message was distributed for "political purposes." In addition to the

[14] *Wood County v. Board of Vocational, Technical and Adult Educ.,* 60 Wis. 2d 606, 613, 211 N.W.2d 617, 620 (1973).

definition in sec. 11.01(16), Stats., "political purposes" has been interpreted in an opinion of the state elections board.[15] The opinion says that determinations as to whether acts are for "political purposes" must be made on a case-by-case basis. Some factors to evaluate in making this determination include: (1) the distributor's intentions as to political office; (2) the content of the materials; (3) the manner of distribution; (4) the pattern and frequency of distribution; and (5) the value of the distributed materials.[16]

We agree that a case-by-case analysis is necessary. Viewing the facts in a light most favorable to Crawford, we hold that the special message was not distributed for a political purpose; therefore, Crawford's complaint was properly dismissed for failure to state a claim. The message stated the reasons for the 1984 property tax increase and it was sent along with the tax bills. The content of the message was largely informational. Although the respondents were all about to seek reelection, their names did not appear on the message. On these facts, it was quite clear that under no circumstances could Crawford recover. The trial court did not err in dismissing the complaint for failure to state a claim upon which relief could be granted.

We expressly reject the City's argument that because the authorization of the special message was an official act, the respondents are immune from liability under sec. 893.80(4), Stats. Section 893.80 provides that no suit may be brought against the agents or employees of a political corporation for acts done in the exercise of legislative functions. If the respondents were found to have distributed materials for political purposes, the

[15] Op. El. Bd. 76–12 (1976).
[16] Id.

specific prohibition against such conduct in sec. 11.33, Stats., would prevail over the general immunity granted in sec. 893.80 (4).[17]

Crawford also argues that the trial court's interpretation of sec. 11.33, Stats., denied equal protection and due process to nonincumbent candidates for elective office. Crawford argues that the government may not use public facilities to favor one idea over another.[18] This argument fails to explain what nonincumbent candidates are being denied. Nonincumbents are free to express themselves, distribute information or assemble where they may please. We have concluded that the "special message" was not distributed for "political purposes." Therefore, Crawford and nonincumbent candidates were not denied due process or equal protection.

*By the Court.*—Judgment affirmed.

[17] *See Wisconsin Gas & Elec. Co. v. City of Ft. Atkinson,* 193 Wis. 232, 241–43, 213 N.W. 873, 877 (1927).

[18] *Police Dep't v. Mosley,* 408 U.S. 92, 96 (1972).