STATE of Wisconsin, Plaintiff-Appellant,

v.

Beth M. BAEZA, Defendant-Respondent.†

Court of Appeals

*No. 89-0760-CR. Submitted on briefs November 30, 1989.—Decided May 9, 1990.*

(Also reported in 457 N.W.2d 522.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Paul Lundsten,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

Before Nettesheim, P.J., Brown and Scott, JJ.

BROWN, J.   The state of Wisconsin appeals from an order granting Beth M. Baeza's motion to dismiss one count of welfare fraud, sec. 49.12(6), Stats. We reverse. The state did not abuse its discretion in issuing an information charging welfare fraud, nor is it a violation of Baeza's fifth amendment right against self-incrimination to require her to give the Fond du Lac County Department of Social Services notice of newly acquired income.

Baeza is a resident of Fond du Lac county and has been receiving AFDC since October 3, 1984 pursuant to ch. 49, Stats. During this time, Chester Hendricks, a friend, gave her his furniture and other belongings, which Baeza stored in her basement. Hendricks was subsequently admitted to a nursing home where he died in March 1985. Sometime between March 1985 and May 1985, Baeza discovered $20,000 in a chest previously owned by Hendricks. Baeza then engaged Attorney William McGalloway to represent her in the Hendricks estate. He advised her to keep the money in a bank, and in June, Baeza put the money into a savings account in her own name. When no probate action was commenced, she began spending the money.

At the preliminary hearing, evidence was adduced that on May 30, Betty Marx of the Fond du Lac County Department of Social Services (the department) wrote a memo to Dennis Kenealy, Corporation Counsel, stating that Baeza was an AFDC recipient and that she had found a large sum of money. The memo stated, in pertinent part:

> Beth Baeza is currently on AFDC. She claims to have been given some personal belongings from Chester Hendricks, who is now deceased. She has found a large sum of money in a trunk that he gave her. Beth has engaged Attorney Wm. Mc Galloway to represent her and she wants to be named administrator of Chester's will. As far as I can determine, this money can not be used by Beth at this time, until this case appears in probate court—I am sending this memo to you, as you requested, so that you can follow up with the court to determine if and when Beth is awarded any monies from this estate.

Baeza's eligibility for AFDC was reviewed by the department on two occasions during the time she was in

possession of the money. Baeza did not report the $20,000 as income on either of these two occasions. Although it appears that the department was aware that Baeza was in possession of $20,000, there is no indication from the record that the department knew that she intended to claim it as her own or to spend the money.

A complaint was filed alleging public assistance fraud contrary to sec. 49.12(6), Stats. That section states:

> Where a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agency granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency of receipt of such assets or income or both shall be considered a fraud and the penalties in sub. (1) shall apply.

*Id.*

At the close of the preliminary hearing, Baeza moved to dismiss the complaint on the ground that the department had received notice of her having found $20,000. The motion was denied, probable cause that a felony had been committed was found, and Baeza was bound over for trial. Shortly thereafter, an information was issued charging Baeza with violating sec. 49.12(6), Stats.

Baeza then filed two motions. One, she moved to dismiss the information as not founded on probable cause to believe that sec. 49.12(6), Stats., was violated. Two, she renewed her motion to dismiss at the conclusion of the preliminary hearing on the grounds that no facts were there adduced to support a finding of probable cause to believe that sec. 49.12(6) was violated. At the

655

motion hearing, Baeza withdrew her motion to dismiss the information. The renewed motion to dismiss at the conclusion of the preliminary hearing was granted by the trial court and the state appeals.

The trial court apparently dismissed the case because it questioned the propriety of: (1) interpreting the term "income" in sec. 49.12(6), Stats., as including "illegal income"; (2) charging Baeza with welfare fraud, suggesting that other crimes should have been charged instead; and (3) bringing a criminal complaint against Baeza when she had a civil obligation to reimburse the AFDC program. The state asserts that these are improper grounds for dismissing a charge at the close of a preliminary hearing and we agree.

Whether sec. 49.12, Stats., requires AFDC recipients to report illegally obtained income or assets involves statutory interpretation that we undertake *de novo.* *Crawford v. Whittow,* 123 Wis. 2d 174, 179, 366 N.W.2d 155, 157 (Ct. App. 1985). In interpreting statutory language, we determine whether it is ambiguous, and if it is not, we give the statute its plain meaning. *See id.*

Section 49.12(6), Stats., requires AFDC recipients to report any income or assets. The statute embraces no exceptions. We decline to look behind this clear language for an exclusion of illegally obtained income or assets from the reporting requirement. Since $20,000 is indisputably an asset, its receipt must be reported.

The trial court's second and third grounds for dismissal, that the state ought to have charged theft or embezzlement and that Baeza may face civil liability, are not bases for denying the state's request for bind over. The purpose of a preliminary hearing is to determine if there is probable cause to believe that the defendant

committed a felony. *See State v. Dunn,* 121 Wis. 2d 389, 397–98, 359 N.W.2d 151, 155 (1984). That the trial court believes crimes other than welfare fraud were committed by no means defeats a finding of probable cause to believe that a crime was committed, and neither do potential civil actions. So long as probable cause to believe that some felony has been committed is found at the preliminary hearing, the defendant may be bound over for trial regardless of other possible charges. *Bailey v. State,* 65 Wis. 2d 331, 341, 222 N.W.2d 871, 876 (1974). "If it appears that *any* offense has been committed and that the defendant is probably guilty of *any* offense, [the court] must hold the defendant for trial." *Hobbins v. State,* 214 Wis. 496, 510, 253 N.W. 570, 576 (1934) (emphasis in original).

We can affirm a trial court's ruling if it states the right result for the wrong reason. *State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982). Baeza, however, offers no alternative theory in support of dismissal at the close of the preliminary hearing. Indeed, Baeza abandons her challenge to the bind over on appeal, evidently acknowledging that the preliminary hearing demonstrated probable cause to believe that she committed a felony. Her brief expressly states that no claim is made that she is free of all culpability. In short, Baeza concedes the propriety of the bind over on appeal.

Instead, Baeza renews her motion—previously abandoned in the trial court—challenging the information on the ground that no probable cause exists to support a charge of welfare fraud pursuant to sec. 49.12(6), Stats. Although Baeza raises this issue for the first time on appeal, this court recognizes that a respondent may raise any defense to an appeal even if that defense is

inconsistent with the stand taken at trial. *State v. Holt,* 128 Wis. 2d 110, 124–25, 382 N.W.2d 679, 687 (Ct. App. 1985). However, Baeza's argument does not support dismissal of the information.

Charges recited in the information need not be supported by probable cause. *State v. Burke,* 153 Wis. 2d 445, 456, 451 N.W.2d 739, 744 (1990). The only requirement is that the crime charged in the information be not "wholly unrelated" to the evidence adduced at the preliminary hearing. *Id.* at 457, 451 N.W.2d at 744. The *Burke* court listed seven factors to be considered when assessing whether a charge in the information is wholly unrelated to the evidence. These are: (1) the parties involved; (2) the witnesses involved; (3) the geographical proximity; (4) the time; (5) the physical evidence; (6) the motive; and (7) intent. *Id.* In the present case, evidence presented during the preliminary hearing focused on the parties, witnesses, geographical proximity, time, physical evidence, motive and intent germane to the allegation of welfare fraud made in the information. Thus, the charge is not "wholly unrelated" to the evidence adduced at the preliminary hearing; indeed, it could not be more intimately entwined. The state is therefore entitled to charge welfare fraud in the information.

Baeza next asserts that sec. 49.12(6), Stats., compels her to testify against herself in violation of the fifth amendment. When confronted by a conflict between the government's need to regulate and the privilege against self-incrimination, we resolve the question by balancing the public need on one hand and the individual claim to constitutional protection on the other. *United States v. Flores,* 753 F.2d 1499, 1500 (9th Cir. 1985). Having done so, we reject Baeza's argument on two grounds.

First, we view this issue as analogous to that in *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841 (1984). There, appellants asserted that they were compelled to confess failing to register for the draft when seeking financial aid. The court stated that:

> a person who has not registered clearly is under no compulsion to seek financial aid; if he has not registered, he is simply ineligible for aid. Since a nonregistrant is bound to know that his application for federal aid would be denied, he is in no sense under any "compulsion" to seek that aid. He has no reason to make any statement to anyone as to whether or not he has registered.

*Id.* at 856–57.

In the instant case, sec. 49.12(6), Stats., only criminalizes failure to report income by one who continues to receive AFDC following receipt. A person who has received $20,000 is under no compulsion to receive financial assistance from the state. While that money is available, the person is simply ineligible for continued AFDC support. One in possession of such a sum is bound to know of his or her ineligibility for aid. Removing oneself from the welfare rolls would obviate the need to report income. While one who receives a less substantial, or less liquid, asset might be in a different position from Baeza, we will not undertake that analysis here.

Second, "the Fifth Amendment privilege is not violated by mandatory self-reporting essential to fulfillment of the objectives of a regulatory statute where disclosures are not extracted from a highly selective group inherently suspect of criminal activities but rather apply to the general public and to activities that are generally

lawful and where the possibility of incrimination is not substantial." *15,844 Welfare Recipients v. King,* 474 F. Supp. 1374, 1385 (D. Mass. 1979) (citing *California v. Byers,* 402 U.S. 424 (1971)). In *King,* welfare recipients objected to their compelled verification of employment information. The *King* court held that all of the *Byers* conditions were met by the verification requirement. *Id.* The court stated that the requirement "is essential to redetermining eligibility and thus to allocating scarce welfare resources fairly; the welfare assistance field is not one 'permeated with criminal statutes'; the self-reporting requirement serves a regulatory, noncriminal purpose and AFDC recipients are not a 'highly selective group inherently suspect of criminal activity.' " *Id.* (citation omitted). These conditions are also satisfied in the instant case. The governmental interest in and the non-prosecutorial function of reporting assets are substantial and weigh heavily in our balancing test.

Nor is there a substantial risk of self-incrimination in reporting the ownership of assets. For this reason, the cases on which Baeza relies are inapplicable. *See Marchetti v. United States,* 390 U.S. 39 (1968); *Grosso v. United States,* 390 U.S. 62 (1968). *Marchetti* and *Grosso* involve forced disclosure of inherently illegal gambling activity, a disclosure which is inherently risky. *Byers,* 402 U.S. at 431. But disclosures with respect to the receipt of assets do not entail the kind of inherent or substantial risk implicated by compelled disclosure of illegal gambling. *See id.* Since owning assets is lawful in Wisconsin, any potential incrimination would necessarily involve a tangentially related criminal transaction. This indicates that the risk of incrimination is not substantial. *See United States v. Dichne,* 612 F.2d 632, 640 (2d Cir. 1979), *cert. denied,* 445 U.S. 928 (1980). We

thus reject Baeza's constitutional challenge to sec. 49.12(6), Stats.

*By the Court.*—Order reversed and cause remanded.