COURT OF APPEALS OF VIRGINIA


Present: Judges McClanahan, Haley and Beales
Argued at Salem, Virginia


DUNIA RIVERA-PADILLA

OPINION BY
v.      Record No. 2600-08-3          JUDGE ELIZABETH A. McCLANAHAN
DECEMBER 8, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

W. Andrew Harding (Eldridge, Elledge, Evans & Harding, PLC, on
brief), for appellant.

Gregory W. Franklin, Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Dunia Rivera-Padilla appeals from her conviction for welfare fraud and argues the trial court

erred in denying her motion to suppress statements she made during an interview with Virginia

Department of Social Services agents. Rivera-Padilla contends the statements were coerced in

violation of her Fifth Amendment right against self-incrimination. Disagreeing with her arguments,

we affirm the judgment of the trial court.

I. BACKGROUND

In September 2003, Rivera-Padilla applied for and began receiving TANF (Temporary

Assistance for Needy Families) and food stamps through the Virginia Department of Social

Services (DSS). In August 2005, during a review with her eligibility worker, Rivera-Padilla was

asked to provide verification of her income to maintain her eligibility for benefits.[1] Because

---

[1] Pursuant to agency regulations, Rivera-Padilla was required to update her income
information every six months.

Rivera-Padilla failed to do so, her case was closed effective August 31, 2005. Rivera-Padilla's children, however, continued receiving Medicaid benefits although those too were scheduled to terminate at the end of September.

In September 2005, DSS received information that Rivera-Padilla was working under an assumed name but not reporting those wages. DSS requested a meeting with Rivera-Padilla to obtain information regarding Rivera-Padilla's income to determine if her children remained eligible for the Medicaid benefits as those benefits were scheduled to terminate September 30th, 2005.[2] Initially present at the meeting were Rivera-Padilla, a DSS eligibility worker, social worker, and interpreter. Because the DSS workers were having difficulty getting Rivera-Padilla to understand what information DSS needed, Sarah Hogan, a fraud investigator, was asked to join the meeting. Hogan was introduced to Rivera-Padilla as the fraud investigator. Rivera-Padilla was told there was a suspicion that she was receiving income that she had not reported and that in order for benefits to continue the agency needed to follow up on that information.[3] Rivera-Padilla admitted she had been working under an assumed identity and had lied because she feared DSS would report her to the police. When Rivera-Padilla stated how long she had been working, she was told it was possible benefits had been overpaid which would have to be paid back by her and that she could be subject

---

[2] Benefits are certified for a specific time frame and if the requested information regarding income is not given to continue the benefits, they will be terminated. Therefore, if Rivera-Padilla had failed to appear for the meeting, the benefits would have discontinued, as scheduled, on September 30th.

[3] According to Hogan, at the time she joined the meeting, while the agency had information Rivera-Padilla was working under an assumed identity and not reporting income such that she may not be eligible for continued benefits, the agency was not aware there was an issue with a prior time frame during which Rivera-Padilla had already received benefits.

to fraud charges for submitting false documentation.[4] Subsequently, Rivera-Padilla was charged

with fraud in connection with benefits she received to which she was not entitled during the time

she was earning wages that were not reported to DSS.

Before trial on the fraud charges, Rivera-Padilla moved to suppress the statements she made

during the meeting on the grounds they were coerced in violation of the Fifth Amendment. The trial

court denied the motion finding that Rivera-Padilla's statements were made voluntarily and free of

"any sort of coercive or pressuring aspect."

ANALYSIS

Rivera-Padilla argues "the threat of denial of public benefits was inherently coercive" such

that her statements to DSS were compelled in violation of the Fifth Amendment. In reviewing a

trial court's denial of a motion to suppress, the burden is on the appellant to show that the denial of

her motion was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541,

545 (2001).

The Fifth Amendment, in relevant part, provides that no person "shall be compelled in

any criminal case to be a witness against himself." This prohibition not only permits a person to

refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges

him not to answer official questions put to him in any other proceeding, civil or criminal, formal

or informal, where the answers might incriminate him in future criminal proceedings."

Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). In all such proceedings,

> a witness protected by the privilege may rightfully refuse to answer
> unless and until he is protected at least against the use of his
> compelled answers and evidence derived therefrom in any
> subsequent criminal case in which he is a defendant. . . . Absent
> such protection, if he is nevertheless compelled to answer, his

---

[4] No decision had been made regarding whether there would be a referral to the Commonwealth's Attorney's Office since the time frame during which Rivera-Padilla had worked and the amount of overpayment was still undetermined.

> answers are inadmissible against him in a later criminal prosecution.

Id. at 78 (citations omitted). "The [Fifth] Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." United States v. Monia, 317 U.S. 424, 427 (1943) (footnote omitted). And "if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the Government has not 'compelled' him to incriminate himself." Garner v. United States, 424 U.S. 648, 654 (1976) (footnote omitted). In general, the Fifth Amendment privilege is not self-executing such that the witness must affirmatively claim the privilege or lose the benefits of its protection. "Thus it is that a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." Minnesota v. Murphy, 465 U.S. 420, 429 (1984).

The general rule that a witness must affirmatively claim the privilege is inapplicable only in well-defined situations where some identifiable factor denied the witness the free will to admit, deny, or refuse to answer. Id. For example, the general rule has "been deemed inapplicable in cases where the assertion of the privilege is penalized so as to [foreclose] a free choice to remain silent, and . . . [compel] . . . incriminating testimony." Id. at 434 (internal quotation marks and citation omitted). See, e.g., Lefkowitz v. Cunningham, 431 U.S. 801 (1977) (political party officer banned from holding any public or party office for five years for exercising privilege); Turley, 414 U.S. 70 (public contractors required to waive their privilege or lose state contracts); Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation, 392 U.S. 280 (1968) (sanitation workers required to waive privilege or lose their jobs); Gardner v. Broderick, 392 U.S. 273 (1968) (state statute required discharge of police officer exercising privilege in an

investigation of police corruption); Spevack v. Klein, 385 U.S. 511 (1967) (attorney disbarred for exercising privilege and refusing to honor a subpoena); Garrity v. New Jersey, 385 U.S. 493 (1967) (police officers in corruption investigation were required to either waive privilege or lose their jobs). Thus, in such cases, the individual's very assertion of the privilege triggers a penalty.[5]

It is undisputed that Rivera-Padilla failed to claim her Fifth Amendment privilege against self-incrimination during the DSS interview. She argues, though, her failure is excused by the "penalty" exception because her choice to remain silent was foreclosed by the threat to terminate her benefits unless she gave the requested information to DSS.[6] But "[i]n each of the so-called 'penalty' cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" Murphy, 465 U.S. at 434 (quoting Cunningham, 431 U.S. at 806.) It is "[t]he threat of punishment for reliance on the privilege [that] distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony." Id. at 435. Thus, to determine whether Rivera-Padilla's statements were voluntary or involuntary, the issue is not whether she was compelled to attend the meeting with DSS and answer questions in order to claim benefits, but whether she was coerced to surrender her privilege to claim benefits. See id. at 434-45.

---

[5] Other exceptions to the requirement of a timely assertion of the Fifth Amendment privilege have been developed in the context of custodial interrogations requiring Miranda warnings and in the context of the federal occupational and excise taxes on gamblers. See Murphy, 465 U.S. at 429-40. Rivera-Padilla does not contend her failure to claim the privilege is excused by these exceptions, which clearly have no application.

[6] We assume without deciding for purposes of our analysis the loss of her children's Medicaid benefits would constitute a "penalty" within the meaning of Garrity and other "penalty" cases.

Rivera-Padilla cannot rely on the "penalty" exception to claim she was compelled to give statements in violation of the Fifth Amendment because she was never told she must forgo her Fifth Amendment privilege to seek the benefits. She was required to provide information regarding her income in order to seek the continuation of the benefits but that requirement did not convert her voluntary statements into compelled ones since she was not refrained from claiming her privilege.[7] See Selective Service System v. Minnesota Public Interest Research Group, 468 U.S. 841, 858 (1984) (requirement that student applicants for federal financial aid state they had registered for draft to be eligible for aid did not compel them to incriminate themselves where "the Government has not refused any request for immunity for their answers or otherwise threatened them with penalties for invoking the privilege"); Husske v. Commonwealth, 252 Va. 203, 217, 476 S.E.2d 920, 928 (1996) (court-ordered requirement that defendant meet with mental health workers "did not in itself convert his 'otherwise voluntary statements into compelled ones'" where he was not threatened if he relied on privilege (quoting Murphy, 465 U.S. at 427)); J.D. v. Commonwealth, 42 Va. App. 329, 591 S.E.2d 721 (2004) (student summoned to principal's office to provide information regarding thefts at school was not coerced into making incriminatory statements where he was not threatened with disciplinary action if he exercised his right to remain silent).[8] Simply put, it is permissible for the state to

----

[7] Rivera-Padilla contends that questions related to eligibility for future benefits asked by an eligibility worker are permissible but questions related to past events or by a fraud investigator are not permissible. This distinction is irrelevant since we have assumed the interview with DSS was a "proceeding . . . where the answers might incriminate" Rivera-Padilla making the Fifth Amendment privilege applicable. Turley, 414 U.S. at 77.

[8] The Commonwealth argues Rivera-Padilla's obligation to provide information regarding her eligibility is much like that of a probationer who must appear and give statements to his probation officer regarding matters relating to his probationary status. See Murphy, 465 U.S. at 435-39 (Court holding there was no Fifth Amendment violation where Minnesota law required probationer to meet with his probation officer and give truthful answers since Minnesota did not condition his probation on waiving his Fifth Amendment privilege with respect to further criminal prosecutions). Rivera-Padilla challenges the Commonwealth's

require persons to provide relevant accurate information regarding matters relating to benefits or risk discontinuation of the benefits. See, e.g., State v. Rivers, 146 P.3d 999 (Alaska Ct. App. 2006) (requirement that recipient of unemployment benefits provide information to fraud investigator did not compel him to incriminate himself where he claimed the obligation amounted to an economic threat to discontinue his benefits); State v. Baeza, 457 N.W.2d 522 (Wis. Ct. App. 1990) (requirement that welfare recipient give notice of newly acquired income did not compel her to incriminate herself where she claimed she would be forced to admit illegally acquired income); Alcaraz v. Block, 746 F.2d 593 (9th Cir. 1984) (requirement that applicant for school meal eligibility food stamps provide social security number did not compel him to incriminate himself where he claimed he was being forced to admit he was an illegal alien).[9]

---

reliance on cases involving the use of incriminating statements by probationers because courts have relaxed restrictions on gathering information from probationers due to the rehabilitative value of probation. The United States Supreme Court, though, has expressly noted when "a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted." Murphy, 465 U.S. at 426. Therefore, while the state may impinge upon a probationer's privacy rights to assure the conditions of probation are being observed, it may not compel the probationer to incriminate himself in a pending or subsequent criminal prosecution. The Court's holding in Murphy was not based on a relaxed restriction on gathering information from probationers as Rivera-Padilla suggests, but rather on the fact that Minnesota did not condition Murphy's probation on waiving his Fifth Amendment privilege. As the Court stated, Murphy's situation was "indistinguishable from that facing suspects who are questioned in noncustodial settings" and "grand jury witnesses, who are sworn to tell the truth and placed in a setting conducive to truthtelling." Id. at 432, 431. Indeed, while the probation setting is coercive in nature since a probationer is compelled by court order to attend meetings with his probation officer, a welfare recipient is "in no sense under any [governmental] 'compulsion' to seek that aid." Selective Service System, 468 U.S. at 857 (Court pointing out difference between public contractors required by New York law to waive privilege and male students disqualified from seeking federal financial aid due to their failure to register for the draft).

[9] The Fifth Amendment privilege is not violated by mandatory self-reporting necessary to accomplish the objectives of a regulatory statute where disclosures are not "extracted from a highly selective group inherently suspect of criminal activities . . . in an area permeated with criminal statutes" but rather apply to the general public and to activities that are generally lawful.

In Rivers, the Alaska Court of Appeals similarly concluded statements by a recipient of unemployment benefits to an agency investigator who suspected the recipient of fraud were made voluntarily despite the fact he was required to attend the interview and answer questions. As the concurring judge noted in writing separately to emphasize the core of the opinion,

> [F]or purposes of [the penalty] exception, one must distinguish situations where a person will be penalized for the very act of asserting the privilege (*e.g*., the person will lose their job if they assert the privilege, regardless of the other evidence in the case) from situations where a person is free to assert the privilege but they then run the risk that, based on the remaining evidence, the court or administrative agency will decide the case against them. The exception applies only to the former situation, not the latter.

Rivers, 146 P.3d at 1005 (footnote omitted). There is no evidence DSS asked Rivera-Padilla to waive her Fifth Amendment privilege against self-incrimination much less indicated, either expressly or impliedly, that her eligibility for benefits was conditioned on her forfeiting her Fifth Amendment privilege.[10]

Therefore, we conclude since Rivera-Padilla "revealed incriminating information instead of timely asserting [her] Fifth Amendment privilege, [her] disclosures were not compelled incriminations." Murphy, 465 U.S. at 440. We further hold the "penalty" exception articulated in Garrity and its progeny is not applicable since DSS neither conditioned Rivera-Padilla's

---

California v. Byers, 402 U.S. 424, 430 (1971) (internal quotation marks and citation omitted). Cf. Marchetti v. United States, 390 U.S. 39 (1968) (Court holding because of the pervasive criminal regulation of gambling activities and the fact that claiming the privilege in lieu of filing a return would tend to incriminate, the privilege may be exercised by failing to file). Rivera-Padilla does not seek application of this exception.

[10] Discussing the choice to incriminate themselves or forfeit jobs to *which they were otherwise entitled*, the Court in Garrity noted "[w]here the choice is 'between the rock and the whirlpool,' duress is inherent in deciding to 'waive' one or the other." Garrity, 385 U.S. at 498. Rivera-Padilla claims she faced a similar "Hobson's choice" in that she was forced to choose between surrendering her privilege (which as we stated she was not asked to do) and forfeiting benefits. We assume, for the sake of argument, she was otherwise entitled to the benefits.

eligibility to obtain benefits on a waiver of her Fifth Amendment rights nor threatened to disqualify her from seeking benefits if she did rely on the privilege.[11]

For these reasons, we affirm the judgment of the trial court.

Affirmed.

---

[11] We reject Rivera-Padilla's contention that our conclusion is precluded by the recent decision in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), in which the Virginia Supreme Court held it was improper to affirm the defendant's convictions on grounds not argued in the trial court or this Court where additional factfinding was necessary. At trial, Rivera-Padilla moved to suppress her statements in reliance on the "penalty" exception recognized in Garrity and the Commonwealth argued the Garrity exception was inapplicable. The trial court agreed with the Commonwealth finding Rivera-Padilla's statements were not compelled. On appeal, Rivera-Padilla again contends Garrity and its progeny apply such that her statements were compelled despite her failure to claim privilege and the Commonwealth again contends Garrity is inapplicable. Affirming the trial court we likewise agree with the Commonwealth that Garrity is inapplicable. We fail to see how Whitehead, even under the broadest interpretation, can be construed so as to preclude us from adopting this rationale. Although Rivera-Padilla points to the Commonwealth's failure to cite Murphy in the trial court, the Commonwealth is not prohibited from relying on cases not presented to the trial court when its position was adequately presented at trial, as it was here. See Byrd v. Commonwealth, 50 Va. App. 542, 549, 651 S.E.2d 414, 418 (2007).