CASANUEVA, Judge.
The State of Florida appeals from the trial court’s order suppressing J.T.D.’s confession in this delinquency proceeding. Because the court erred in finding that the juvenile was in custody at the time he was questioned, we reverse.
A petition charged J.T.D., a middle schooler, with lewd or lascivious molestation of another student. Before trial, defense counsel filed a motion to suppress the admission J.T.D. had made to the assistant principal of his school. The motion to suppress claimed the statement was made during a custodial interrogation without the benefit of the legal warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
When reviewing orders on motions to suppress a confession, appellate courts make a two-tier inquiry. First, on questions of historical fact, the trial court is entitled to a presumption of correctness and can be reversed only where those findings are not supported by the record. The second tier permits a de novo review of the application of the legal standards to the historical facts as found by the trial court. Loredo v. State, 836 So.2d 1103, 1105 (Fla. 2d DCA 2003) (citing Connor v. State, 803 So.2d 598, 605-08 (Fla.2001), cert. denied, 535 U.S. 1103, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002)).
The facts were developed at the suppression hearing, where the State presented two witnesses, Gail Weston, the assistant principal, and St. Petersburg Police Officer Deloris Williams, the school’s resource officer. No one testified for the defense. Ms. Weston detailed her investigation of a complaint alleging that J.T.D. had improperly touched a female student on her breast and/or her buttocks. She interviewed J.T.D. in the principal’s office twice, in the presence of the principal. During the first interview, J.T.D. denied any wrongdoing. After further investigation and talks with witnesses, J.T.D. was brought in a second time. This second interview is the primary focus of this case.
Ms. Weston’s testimony contained a number of facts important to the resolution of the suppression motion. The investigation Ms. Weston conducted was mandated by the Pinellas County School Board to enforce its student code of conduct. To further the public policy of providing safe schools, school officials investigate all complaints to ascertain whether any discipline is required. When the complaint is about behavior that might also constitute a crime, it is customary for the school resource officer to sit in during the interviews. This was the reason Ms. Weston had Officer Williams sit in on J.T.D.’s second interview.
Officer Williams testified that she knew J.T.D. from earlier contacts. Her separate investigation of the incident had begun the previous day, before the start of the school’s own investigation, and was prompted by a telephone conversation with the victim’s mother. Ms. Weston *795 and Officer Williams had shared information. Because her presence was at times required elsewhere, Officer Williams was in and out of the room during J.T.D.’s second interview. She did not interview him while he was in the principal’s office or threaten him with confinement at the juvenile detention center, although she had warned him on earlier occasions that she had the authority to send him there based on his behavior. The officer did hear J.T.D. admit to Ms. Weston during the second interview that he had touched the complaining student’s dress and her “butt.” When J.T.D. made this admission, Ms. Weston turned the questioning over to Officer Williams, who started to read J.T.D. the Miranda warnings. Unfortunately, another problem at the school arose and required the officer to leave; thus, the Miranda warnings were not completed. Officer Williams’s interview ceased at that moment.
Although Officer Williams confirmed that she and the assistant principal shared the information they gathered, both witnesses maintained that they conducted separate investigations. Additionally, Officer Williams admitted that whatever she heard J.T.D. tell the assistant principal would be included in her report.
Following the hearing, the circuit court made several findings: that the assistant principal was not an agent of law enforcement; that because Officer Williams had knowledge of the witnesses’ statements, J.T.D. was the target of a criminal investigation; and that the school resource officer’s investigation was inextricably intertwined with the school’s investigation. Thus, the court concluded that a custodial interrogation had taken place entitling J.T.D. to Miranda warnings. Because he had not received them at the time he confessed, the court granted J.T.D.’s motion to suppress the confession.
The case law supports the circuit court’s conclusion that Ms. Weston was not acting as a law enforcement agent. In W.B. v. State, 356 So.2d 884 (Fla. 3d DCA 1978), the juvenile defendant argued that a school official could become an agent of the police and thereby trigger the need for Miranda warnings. Because the assistant principal’s job in W.B. was only to investigate complaints arising from a student’s activity on school grounds, the Third District concluded that the assistant principal was a school official and not a police official. “Therefore, the necessity for Miranda warnings did not exist.” Id. at 885. Here, the circuit court also concluded that the assistant principal was not an agent of the police. Given that finding, Miranda warnings were not necessary in this case either.
The Third District confronted a similar issue in State v. V.C., 600 So.2d 1280 (Fla. 3d DCA 1992), where a student at a high school identified to an assistant principal two students who had robbed him. The assistant principal, in turn, informed the police of the alleged robbery. Later, the assistant principal interviewed separately each student the victim had identified, one of whom was V.C. Each student admitted the robbery and provided a written statement. The assistant principal warned the two that the police could get involved. The two students moved to suppress their statements, alleging that they were not freely given and were the products of an illegal detention. The appellate court reversed the circuit court’s suppression order because the record showed there was no evidence that the assistant principal coerced the students or did anything unconstitutional to extract the confessions. Additionally, although the students were not free to leave, this restriction flowed from their status as students, not suspects.
*796 Similarly, in In re J.C., 591 So.2d 315 (Fla. 4th DCA 1991), a high school student admitted possessing marijuana to the assistant principal during an interview conducted in the presence of the school’s resource officer, a deputy sheriff. The Fourth District affirmed the circuit court’s ruling that under the circumstances no Miranda warnings were required. The majority reasoned that interrogation by a school official, acting in that capacity and not as a police official, could not be construed as custodial interrogation requiring Miranda warnings. Id. at 316. The mere presence of a law enforcement officer who stands mute is not sufficient to transform the school official’s interview into a custodial interrogation by law enforcement. Conversely, if a law enforcement officer participates in the interrogation, Miranda warnings would be required. Id.
In J.T.D.’s case, the circuit court found that Ms. Weston was not acting as a police agent, and the record supports that determination. Furthermore, Officer Williams testified without rebuttal that she was merely present during the interview, in and out of the room, and asked no questions. Under the principles of W.B., V.C., and J.C., Miranda warnings were unnecessary as the police officer’s mere presence did not transform the school official’s interview of J.T.D. into a custodial interrogation.
Our conclusion that Miranda warnings were not required in this case is bolstered by application of the traditional concept of custody to these facts. For purposes of Miranda, custody is “any restraint on freedom of movement of the degree associated with formal arrest.” Ramirez v. State, 739 So.2d 568, 573 (Fla.1999). The determination whether a person is in custody is a mixed question of law and fact, requiring application of a four-factor test examining the following:
(1) The manner in which police summon the subject for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence suggestive of his guilt; and (4) whether the suspect is informed that he is free to leave the place of questioning.
Id. at 574 (citing State v. Countryman, 572 N.W.2d 553, 558 (Iowa 1997)). In J.T.D.’s case, these four factors show that he was not under custodial interrogation.
First of all, J.T.D. was summoned by his school’s assistant principal, not by a police officer, for questioning on a student code of conduct issue- which could result in student discipline. Second, the clear purpose of the interview was to determine whether J.T.D. had breached the student code of conduct by improperly touching a fellow student. The interview took place in the principal’s office, not at a jail facility or in an officer’s interview room. The principal, assistant principal, and school resource officer were present, but only the first two participated in questioning J.T.D.
As to the third factor, Ms. Weston testified that she told J.T.D. the substance of the other witnesses’ statements which incriminated him. Thus, he was confronted with evidence of his wrongful behavior. As to the fourth factor, J.T.D. was not told that he could leave, although under school policy he had to remain until excused, and it is likely that he was aware of this requirement. However, because of the special context of the public school in this case, the fact that J.T.D. could not leave the principal’s office is not determinative of whether this was a custodial interrogation that had to be preceded by Miranda warnings.
The United States Supreme Court has noted:
*797 Even in schools that have been spared the most severe disciplinary problems, the preservation of order and a proper educational environment requires close supervision of school children, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult. “Events calling for discipline are frequent occurrences and sometimes require immediate effective action.” Goss v. Lopez, 419 U.S. [565], at 580, 95 S.Ct. [729], at 739 [, 42 L.Ed.2d 725 (1975)]. Accordingly, we have recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship. See id., at 582-583, 95 S.Ct. at 740; Ingraham v. Wright, 430 U.S. [651], at 680-682, 97 S.Ct. [1401], at 1417-1418 [, 51 L.Ed.2d 711 (1977)].
New Jersey v. T.L.O., 469 U.S. 325, 339-40, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
“Traditionally at common law, and still today, unemancipated minors lack some of the most fundamental rights of self-determination — including even the right of liberty in its narrow sense, i.e., the right to come and go at will.” Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Thus, the power possessed by the state over its school children is of a “custodial and tutelary nature, permitting a degree of supervision and control that could not be exercised over free adults.” Id at 655, 115 S.Ct. 2386.
Although both T.L.O. and Vemonia arose in the Fourth Amendment context, their underlying policy pronouncements are relevant to J.T.D.’s Fifth Amendment situation. A proper educational environment requires that school officials be able to closely supervise their students and determine whether rules regarding student behavior have been violated. One need not be an expert in the problems confronting today’s schools to be aware that violent acts occur in the schools of this state, acts against students as well as teachers and administrators. We can envision numerous scenarios where it would be prudent and proper to have a law enforcement officer present. Establishing a blanket rule that excludes the presence of a police officer whenever a school administrator questions a student unless Miranda warnings are given turns a blind eye to the threatening world surrounding our schools. The appropriate focus is to examine the actual conduct of the police officer or school official to determine whether that conduct transformed the school official’s interview into a custodial interrogation by law enforcement. Additionally, where the school official’s conduct shows that he or she has become an agent of law enforcement, that conduct, too, will invoke the protections of Miranda and the privilege against self-incrimination. By placing the focus upon the actual conduct of the school official and the law enforcement officer, those events calling for immediate action in a school disciplinary setting can be evaluated with the necessary flexibility consistent with the constitutional guarantee Miranda warnings provide.
In summary, in consideration of the Ramirez factors, the policy concerns for the schools expressed in T.L.O. and Vemonia, and the circuit court’s finding, supported by the record and case law, that the assistant principal was not an agent of the police, we conclude that Ms. Weston’s interview of J.T.D. in the presence of Officer Williams was not transformed into a custodial interrogation requiring Miranda warnings. Accordingly, we reverse the circuit court’s suppression order.
*798 Reversed and remanded for further proceedings.
FULMER and CANADY, JJ„ concur.