COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


J.D.

                                               OPINION BY
v.       Record No. 2335-02-2          JUDGE SAM W. COLEMAN III
                                          JANUARY 28, 2004
COMMONWEALTH OF VIRGINIA



FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Deborah C. Wyatt (Richard Armstrong; Wyatt & Armstrong, on
briefs), for appellant.

Michael T. Judge, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


A jury found J.D., a juvenile, guilty of petit larceny.  On appeal, J.D. challenges the trial

court's denial of his motion to suppress incriminating statements.  J.D. contends his statements,

which he made in the office of his school's assistant principal, were admitted in violation of the

Supreme Court's holding in Miranda v. Arizona, 384 U.S. 436 (1966), and that the statements

were compelled and involuntary in violation of his Fifth Amendment rights.  Finding no error in

the trial court's denial of the motion to suppress, we affirm J.D.'s conviction.

FACTS

In reviewing a trial court's ruling on a motion to suppress, we view the evidence in the

light most favorable to the prevailing party, and consider the "evidence adduced at both the trial

and suppression hearing." Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138,

139 (1994). See Spivey v. Commonwealth, 23 Va. App. 715, 721, 479 S.E.2d 543, 546 (1997).

"'The burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered

most favorably to the Commonwealth, constituted reversible error.'" <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation omitted).

In May of 2001, J.D. was a fourteen-year-old student at Albemarle High School, where his father was a teacher. A series of thefts had occurred at the school during that month. School authorities identified J.D. and three other students as suspects in a theft that had occurred during the latter part of the month.

At about 2:30 p.m. on May 25, 2001, Steven Wright, an associate principal at the school, summoned J.D. to his office and questioned him about the most recent theft. In addition, Lawrence Lawill, the principal at Albemarle High School, was present during portions of Wright's questioning of J.D. The record does not indicate that Lawill participated in the interview. Officer Stuart Snead, the school resource police officer, was present while Wright conducted the interview of J.D. The officer was silent during the interview. He did not instruct Wright about questioning J.D. He and Wright had no prior discussions about potential criminal charges against J.D.

During the interview, J.D. was not told he could not leave the office nor was he restrained in any way. Wright told J.D. to tell what, if anything, he knew about the thefts. J.D. made oral and written statements acknowledging his involvement in the theft of a video camera that was school property. He then assisted Wright in the recovery of the camera.

J.D.'s father joined Wright and J.D. in Wright's office at about 4:45 p.m., after the school day had ended. Wright explained that he was investigating the theft of property at the school and showed J.D.'s father the merchandise J.D. had helped to recover. J.D.'s father instructed J.D. to tell him the truth about what had happened. J.D.'s subsequent statements were consistent with those he made before his father came to Wright's office.

On cross-examination Wright testified that a student can be disciplined for refusing to obey an assistant principal at Albemarle High School. The punishment imposed in such a situation would

depend upon the circumstances. Wright also indicated that he had no way to require or force a student to talk. J.D. testified he believed he had no option but to report to Wright's office and to cooperate because "if you don't do it you suffer different consequences from detention to suspension." J.D. offered no further testimony regarding the content or circumstances of his conversation with Wright.

MIRANDA ANALYSIS

J.D. argues that the admission of his statement violated the principles announced in Miranda v. Arizona, 384 U.S. 436 (1966). In Miranda, the Supreme Court of the United States

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." Accordingly, [the Court] laid down "concrete constitutional guidelines for law enforcement agencies and courts to follow." Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

Dickerson v. United States, 530 U.S. 428, 435 (2000) (quoting Miranda, 384 U.S. at 439, 442, and 479). Fundamentally, the Miranda rule "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." Roberts v. United States, 445 U.S. 552, 560 (1980). The Miranda guidelines are

> directed toward police conduct. . . . "The duty of giving 'Miranda warnings' is limited to employees of governmental agencies *whose function is to enforce the law*, or to those acting for such law enforcement agencies by direction of the agencies; . . . it does not include private citizens not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement."

Mier v. Commonwealth, 12 Va. App. 827, 830, 407 S.E.2d 342, 344 (1991) (emphasis added) (citation omitted) (concluding that a private security officer's failure to give Miranda warnings before questioning a shoplifter did not render the suspect's statement inadmissible).  But see Estelle v. Smith, 451 U.S. 454, 463-65 (1981) (to be admissible against defendant at the penalty phase of capital murder trial, defendant's statements to court-appointed psychiatrist must have been preceded by Miranda warnings); Mathis v. United States, 391 U.S. 1, 3-5 (1968) (Internal Revenue Service investigator was required to advise defendant, then in prison for other offenses, of his Miranda rights before questioning him about instances of tax fraud).

Steven Wright, in questioning J.D., was not acting as a police officer or as a governmental agent with law enforcement authority.  Numerous appellate courts from other states have concluded that a school principal or other school official who questions a student about a possible violation of law or school regulation does not, absent other circumstances, act as a law enforcement officer or agent of the state with law enforcement authority.  See, e.g., In re Navajo County Juvenile Action No. JV91000058, 901 P.2d 1247, 1249 (Ariz. Ct. App. 1995); In re Corey L., 250 Cal. Rptr. 359, 361 (Cal. Ct. App. 1988); S.A. v. State, 654 N.E.2d 791, 797 (Ind. Ct. App. 1995); Commonwealth v. Snyder, 597 N.E.2d 1363, 1369 (Mass. 1992); State v. Tinkham, 719 A.2d 580, 583-84 (N.H. 1998); State v. Biancamano, 666 A.2d 199, 203 (N.J. Super. Ct. App. Div 1995); In re Harold S., 731 A.2d 265, 268 (R.I. 1999); In re V.P., 55 S.W.3d 25, 33 (Tex. App. 2001).

J.D. cites several out-of-state cases for the proposition that a school official is required to give a student Miranda warnings prior to questioning if any resulting statement is to be admissible in a criminal proceeding.  See In re: Jorge D., 43 P.3d 605 (Ariz. Ct. App. 2002); State v. John Doe, 948 P.2d 166 (Idaho Ct. App. 1997); State v. Killitz, 651 P.2d 1382 (Or. Ct. App. 1982); State v. D.R., 930 P.2d 350 (Wash. Ct. App. 1997).  In each of these cases, however,

it was a police or security officer who interviewed the student, not a principal or other school official.[1]

We agree with the weight of authority and conclude that Wright was not a law enforcement officer, nor was he acting as an agent of a law enforcement governmental agency, when he interviewed J.D. Wright did not act at the direction of the police. In the course of his duties as assistant principal, Wright initiated and conducted the investigation regarding the recent thefts at the school. Although Wright had Snead present at the interview, Snead did not participate. Snead offered Wright no advice about how to conduct the questioning or what to do with the information Wright might obtain.

As the Supreme Court of New Hampshire has observed,

> [a]lthough school principals are "responsible for administration and discipline within the school," and "must regularly conduct inquiries concerning both violations of school rules and violations of law," they are not law enforcement agents. They are "neither trained nor equipped to conduct police investigations," and, unlike law enforcement agents, enforcing the law is not their primary mission. "Law enforcement officers are responsible for the investigation of criminal matters and maintenance of general public order," while school officials, in comparison, "are charged with fostering a safe and healthy educational environment that facilitates learning and promotes responsible citizenship."

Tinkham, 719 A.2d at 583 (citations omitted).

---

[1] J.D. contends the United States Supreme Court's holding in New Jersey v. T.L.O., 469 U.S. 325 (1985), dictates a finding that Wright acted as an agent of the government in interrogating J.D. In T.L.O., the Court held that the Fourth Amendment proscription against unreasonable searches and seizures applied to limit searches at schools conducted by public school officials. See id. at 333. This holding in T.L.O. does not, however, compel a conclusion that Wright was acting as an agent of the state for purposes of the Fifth Amendment and Miranda. Indeed, as the Supreme Court noted in T.L.O., it considered "*only* searches carried out by school authorities acting alone and on their own authority." Id. at 342 n.7 (emphasis added).

Additionally, the Miranda holding applies only when the suspect is in custody. See Bosworth v. Commonwealth, 7 Va. App. 567, 572, 375 S.E.2d 756, 759 (1989). "Whether a suspect is 'in custody' under Miranda is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" Ford v. Commonwealth, 28 Va. App. 249, 256, 503 S.E.2d 803, 806 (1998) (citation omitted).

J.D. was not "in custody" for Miranda purposes at the time Wright interviewed him. J.D. was not restrained during the meeting, which took place in Wright's office. Wright did not indicate that J.D. was under arrest or was subject to arrest in the future. While the security officer was present in the room, he made no show of authority suggesting that J.D. was under arrest or not free to leave. Snead's mere presence during Wright's questioning did not convert the questioning into a custodial interrogation by a law enforcement officer.

In In re Drolshagen, 310 S.E.2d 927 (S.C. 1984), a student was asked to report to the office of his school principal, where school officials questioned the student. Police officers were present in the school office, but did not participate in the interview. The South Carolina Supreme Court found the holding in Miranda inapplicable, stating that "[m]erely because the questioning took place in the principal's office, in the presence of police officers, 'did not render it a "custodial interrogation."'" Id. at 927 (citation omitted).

Because J.D. was not "in custody" when Wright questioned him and because Wright was not a law enforcement officer or state officer acting in that capacity, Miranda has no application here. Accordingly, the trial court did not err in finding that Miranda did not require the exclusion of J.D.'s statements.

J.D. argues, in the alternative, that even if the Miranda holding does not govern the admissibility of his statement, we should adopt a state exclusionary rule in order to encourage

cooperation between school officials and students in enforcing school policy. J.D. asserts that to permit the use of such statements in criminal proceedings will have a "chilling effect" upon the spirit of cooperation and free exchange of information between students and school authorities, an undesirable result from the perspective of both the criminal justice system and society in general. J.D. concedes that such statements could be used for school disciplinary purposes but not in subsequent criminal prosecutions. He argues that to do otherwise will result in a policy where students will be advised not to cooperate with school investigations, which J.D. says is an undesirable result.

We decline J.D.'s invitation to extend the exclusionary rule in order to encourage cooperation between students and school officials investigating criminal conduct. Such policy arguments are more appropriately addressed to the legislature.

VOLUNTARINESS OF STATEMENT

J.D. also challenges the voluntariness of his statements to Wright. In determining whether a statement was made voluntarily,

> "[w]e must [independently] determine whether, in light of the totality of the circumstances, including not only the details of the interrogation, but also the characteristics of the accused, the statement was the product of an essentially free and unconstrained choice by its maker, or whether the maker's will was overcome and his capacity for self-determination critically impaired."

Novak v. Commonwealth, 20 Va. App. 373, 386-87, 457 S.E.2d 402, 408 (1995) (citation omitted). The voluntariness issue is a question of law requiring an independent determination on appeal. See Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992). In making that independent determination, however, "we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Id.

Relating to the voluntariness of a suspect's statement, the Supreme Court has held that evidence of police activity "is a necessary predicate to the finding that a confession is not

'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986).

No evidence suggests J.D. was compelled to confess. Wright made no threats and used no force or intimidation to compel J.D. to make his admissions against his free will. We are not persuaded by appellant's contention that he was coerced into confessing by the mere possibility that he could be punished if he did not remain in Wright's office and answer his questions. In the absence of evidence of governmental coercion or compulsion, we do not disturb the trial court's conclusion that J.D.'s statements were voluntary.

## FIFTH AMENDMENT ANALYSIS

The Fifth Amendment, which was made applicable to the States by the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 6 (1964), requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict . . . an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" Estelle, 451 U.S. at 462 (citation omitted). Not only does the Fifth Amendment establish a person's right not to testify when one is a defendant in a criminal trial but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). J.D. contends his privilege against self-incrimination was violated because he was ordered to Wright's office and then compelled to confess or be punished.

J.D. relies primarily upon the United States Supreme Court's decision in Garrity v. New Jersey, 385 U.S. 493 (1967), in which New Jersey police officers were questioned during an official investigation of allegations of fraudulent conduct. Before the questioning, the officers

- 8 -

were advised of their rights under Miranda not to answer questions, but were informed that any refusal to answer would result in their removal from office.  See id. at 494.  Inculpatory statements from some of the officers were later admitted in criminal prosecutions against them. See id. at 495.  The Court concluded that the Fifth Amendment privilege against coerced statements "prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."  Id. at 500.  As in Garrity, subsequent Supreme Court opinions have held Fifth Amendment violations occurred where the suspect's statements were coerced by the threat of an economic sanction.  See, e.g., Gardner v. Broderick, 392 U.S. 273, 279 (1986) (invalidating state law which required the discharge of any police officer who refused, on Fifth Amendment grounds, to give grand jury testimony concerning police corruption); Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 392 U.S. 280, 283-84 (1968) (finding it unlawful to require sanitation employees to choose between their jobs and their self-incrimination privilege in an official investigation).

J.D. argues that he felt compelled to answer Wright's questions because his silence would have led to some type of administrative punishment or sanction, such as suspension or expulsion. Thus, he argues, he was compelled to incriminate himself.

The facts in this case are unlike the situation in Garrity and its progeny wherein the individuals were directly threatened with substantial economic sanctions and removal from office for refusing to answer questioning from law enforcement officers or governmental officials.  The facts here are more analogous to those in Husske v. Commonwealth, 252 Va. 203, 476 S.E.2d 920 (1996).  In Husske, as a condition of his suspended sentence,  the defendant was ordered to continue participating in a mental health program.  Id. at 206-07, 476 S.E.2d at 922.

During a session with a mental health examiner in the county program, the defendant made statements incriminating himself in a rape. Id. at 207, 476 S.E.2d at 923.

The Supreme Court of Virginia rejected Husske's argument that use of the statements at his subsequent rape trial violated his Fifth Amendment rights, noting the absence of evidence of coercion on the part of the mental health examiner. Id. at 217, 476 S.E.2d at 929. The Court stated that "the defendant's obligation to participate in the mental health treatment program did not in itself convert his 'otherwise voluntary statements into compelled ones.' . . . [N]o one required [the defendant] 'to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.'" Id. at 217, 476 S.E.2d at 928 (citations omitted).

As in Husske, the record in this case contains no evidence of coercion on the part of school authorities. Here, the record demonstrates that Wright merely told appellant to tell him what he knew about the thefts. Wright did not threaten J.D. with disciplinary action if he remained silent or refused to cooperate. J.D.'s subjective concern that he might have received some disciplinary action is not sufficient to prove that state action coerced or compelled him to answer questions against his will. While J.D.'s decision may have been difficult, this Court has recognized that

> "[t]he Fifth Amendment does not insulate a defendant from all 'difficult choices' that are presented during the course of criminal proceedings, or even from all choices that burden the exercise or encourage waiver of the Fifth Amendment's right against self-incrimination." "[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid."

Doss v. Commonwealth, 23 Va. App. 679, 687-88, 479 S.E.2d 92, 96-97 (1996) (citations omitted).

## CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying the motion to suppress. Accordingly, we affirm J.D.'s conviction.

Affirmed.