2010 Ark. App. 644

**K.L., a Minor, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA 09–86.**

Court of Appeals of Arkansas.

Sept. 29, 2010.

Sara M. Sawyer–Hartness, Monticello, for appellant.

Dustin McDaniel, Atty. Gen., Jake H. Jones, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Earlier this year, this case was remanded to the trial court because of inconsistent orders entered, one order filed of record on August 18, 2008, indicating that the charge on which the appellant was adjudicated was sexual indecency with a child, and a second order entered on September 12, 2008, indicating that the charge on which appellant was adjudicated was rape. *See K.L. v. State,* 2010 Ark. App. 265, 2010 WL 972563; *K.L. v. State,* 2010 Ark. App. 11, 2010 WL 26390. On April 5, 2010, the Desha County Circuit Court entered an order to settle the record, finding that the charge against appellant was rape and that appellant was "found guilty" of rape. It is now apparent to this court that the appellant was adjudicated delinquent on the charge of rape.

Appellant makes three arguments on appeal: (1) that the trial court's verdict is not supported by substantial evidence; (2) that the school principal, Darlene Montgomery, was a state actor when she conducted an investigation into the alleged crime, and as such, she was bound by the Fourteenth Amendment; (3) that the trial court erred in prohibiting the introduction of evidence regarding the victim's character for truthfulness and honesty. We affirm.

At the time of the alleged rape, K.L. was eleven years old and in the fifth grade. This case has its genesis in events that supposedly occurred on December 13, 2007, at Reed Elementary in Dumas, Arkansas. A.M., the alleged victim, accused Q.M. and K.L. of dragging her into the boys' bathroom and pulling her pants down, with each boy holding her down while the other penetrated her, K.L. with his finger. A.M.'s story varied each time it was told, and there were several inconsistencies; however, the trial court credited her testimony and adjudicated the charge of rape against K.L. as true. Based upon a referral from a classroom teacher, A.M. and the boys were brought into the principal's office by the dean of students. The principal then proceeded to interview each of the children to obtain their versions of the events.

Appellant's counsel voir dired the principal, Darlene Montgomery, at the adjudication hearing. Montgomery acknowledged that she did not advise the boys that they did not have to answer her questions, and she stated that they initially denied all the allegations. She said that she interviewed the boys twice in a short period of time, but she did not record the interviews. Montgomery testified that the first time she interviewed A.M., A.M. told her that the boys pulled her pants down, which the

principal considered to be a sexual assault, and that there was no allegation of rape. She said that she did not call the boys' parents at that time, but that she called them between 2:30 and 3:00, after she had received the referral about 2:00 p.m. The principal denied that she later told the boys, with her hand on the phone, that they had better tell her what had happened or she was going to call the school resource officer and that they could go to jail; however, she admitted that she told the boys that they had to tell her the truth, or with those allegations, she would have to call the resource officer. Montgomery stated that the boys were free to get up and walk out of her office, but that she never told them that they did not have to talk to her. She said that the boys were accusing each other, and that she brought A.M. in to say what had happened. According to the principal, after she said that she was reaching for the phone to call the resource officer, K.L. told her that he was going to tell her the truth. Montgomery testified that K.L. told her that they were going to class; that he went to the bathroom; that Q.M. called his name and told him to come help him; that Q.M. was pulling A.M. into the bathroom; that she fell and they both pulled her into the bathroom; and that they pulled down her jeans. A.M. said that the boys touched her in her private area on top of her underwear, and the boys agreed that something like that had happened in the bathroom.

■ K.L.'s first point of appeal is a challenge to the sufficiency of the evidence. Under this point, appellant points out the many inconsistencies in A.M.'s testimony. He contends that A.M.'s story is inherently improbable and that her story changed each time she told it. We are unable to reach the merits of this argument because it is not preserved for our review.

Juvenile delinquency proceedings, except as otherwise provided in the juvenile code, are governed by the Arkansas Rules of Criminal Procedure. Ark.Code Ann. § 9–27–325(f) (Repl.2009). Rule 33.1(b) of the Arkansas Rules of Criminal Procedure requires that in nonjury trials, if a motion for dismissal is to be made, it shall be made at the close of all of the evidence, and if a motion for dismissal is made at the close of the prosecution's evidence, it must be renewed at the close of all of the evidence; in both cases, the motion for dismissal must state the specific grounds therefor. The failure to challenge the sufficiency of the evidence at the time and in the manner specified constitutes a waiver of any question pertaining to the sufficiency of the evidence. Ark. R.Crim. P. 33.1(c) (2010). In the present case, although K.L.'s counsel made a motion to dismiss at the close of the State's evidence, this motion was not renewed at the close of all of the evidence. Therefore, appellant's sufficiency argument is waived.

■ K.L. next argues that the trial court erred in failing to suppress Principal Darlene Montgomery's testimony regarding her interview with him. This argument was made in a motion to suppress, which the trial court denied at trial. K.L. argued at trial that the statements made by him to Montgomery were prohibited by Ark.Code Ann. § 9–27–321, which provides:

> Statements made by a juvenile to the intake officer or probation officer during the intake process before a hearing on the merits of the petition filed against the juvenile shall not be used or be admissible against the juvenile at any stage of any proceedings in circuit court or in any other court.

Ark.Code Ann. § 9–27–321 (Repl.2009). He also argues that Montgomery, as the principal, was an officer of the State and questioned him in violation of his right to due process without giving *Miranda* warnings. He further argues that he was in a custodial situation; that any statement given by him was tainted by the overwhelming influence exerted by Montgomery, and that it was clear that he was in a custodial situation and would not be released from that custodial situation until he said or did what he was supposed to do. We find no error in allowing Montgomery's testimony regarding her interview of K.L.

■ Our standard of review for suppression challenges is that we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003).

There are no cases on this issue in Arkansas. However, other states have held that students are not entitled to *Miranda* warnings prior to being questioned by principals because principals are not law-enforcement officers and that statements given to principals are deemed to be voluntary and admissible. *See J.D. v. Commonwealth of Virginia,* 42 Va.App. 329, 591 S.E.2d 721 (2004); *State of Florida v. J.T.D.,* 851 So.2d 793 (Fla.App.2003); *Commonwealth of Massachusetts v. Ira I.,* 439 Mass. 805, 791 N.E.2d 894 (2003); *State of New Hampshire v. Tinkham,* 143 N.H. 73, 719 A.2d 580 (1998); *In re Appeal in Navajo County Juvenile Action No. JV91000058,* 183 Ariz. 204, 901 P.2d 1247 (Ariz.App.1995); *In re Brendan H.,* 82 Misc.2d 1077, 372 N.Y.S.2d 473 (N.Y.Sup. Ct.1975). We find these cases persuasive in the instant case.

In *J.T.D., supra,* the middle-school-aged juvenile was charged with lewd or lascivious molestation of another student; he filed a motion to suppress the admission he made to the assistant principal because he asserted that it was made during a custodial interrogation that required *Miranda* warnings. J.T.D. was interviewed twice by the assistant principal in the presence of the principal. J.T.D. denied any wrongdoing in the first interview. During the second interview, the school resource officer was in and out of the principal's office, but she did not interview J.T.D. or threaten to send him to the juvenile detention center. However, the resource officer testified that she did hear J.T.D. admit to the assistant principal that he had touched the student's "butt," at which time the assistant principal turned the questioning over to the resource officer. The resource officer immediately began to read J.T.D. his *Miranda* warnings but was called away before the warnings were completed and, according to the resource officer, her interview ceased when she was called away while she was reading the student his *Miranda* warnings. The trial court granted the motion to suppress, but the appellate court reversed that determination. The appellate court agreed with the trial court that the assistant principal was not acting as a police agent, but also determined that the fact that an officer was merely present during the interview, asking no questions, did not transform the school official's interview into a custodial interrogation.

■ In the present case, the resource officer was not present until after the interviews by Montgomery who, as principal, was merely trying to discern what, if anything, had happened in the bathroom through interviewing all of the parties. Relying on our sister states that have been faced with this issue, we believe that she had a duty to do so as the school principal. We do conclude K.L. was not free to leave

the principal's office, but this restriction flowed from his status as a student, not a suspect, and the fact that he could not leave the principal's office is not determinative of whether this was a custodial interrogation that required *Miranda* warnings. *J.T.D., supra.* It has been recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *Id.* at 797 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 339–40, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). "[A] school principal or other school official who questions a student about a possible violation of law or school regulation does not, absent other circumstances, act as a law enforcement officer or agent of the state with law enforcement authority." *J.D.*, 591 S.E.2d at 724. The New Hampshire Supreme Court held in *Tinkham*, 719 A.2d at 583 (citations omitted):

> Although school principals are "responsible for administration and discipline within the school," and "must regularly conduct inquiries concerning both violations of school rules and violations of law," they are not law enforcement agents. They are "neither trained nor equipped to conduct police investigations," and, unlike law enforcement agents, enforcing the law is not their primary mission. "Law enforcement officers are responsible for the investigation of criminal matters and maintenance of general public order," while school officials, in comparison, "are charged with fostering a safe and healthy educational environment that facilitates learning and promotes responsible citizenship."

We affirm on this point.

K.L.'s last point of appeal is that the trial court erred in prohibiting the introduction of evidence of the victim's character for truthfulness and honesty. While the State argues that this point is not preserved because the witness's testimony was not proffered, we find that the substance of the evidence is apparent from the context and that we can determine whether K.L. has suffered prejudice. *See Brown v. State*, 368 Ark. 344, 246 S.W.3d 414 (2007); *McEwing v. State*, 366 Ark. 456, 237 S.W.3d 43 (2006). Counsel for K.L. was cross-examining one of A.M.'s friends and asked if she believed A.M. was truthful or dishonest; the State objected on the basis that the victim's character had not been placed into issue, and the trial court sustained the State's objection. While A.M.'s character was very much placed into issue, as it was her testimony on which K.L. was found to be delinquent, we cannot say that the court's evidentiary ruling constituted reversible error in this case. First, this witness was later allowed to testify that she believed A.M. until A.M. got her "more involved in this than I say I was." Furthermore, K.L.'s mother testified that A.M. was always lying about her son; she testified that A.M.'s mother called her and told her that she did not think that K.L. had anything to do with the incident. Finally, A.M.'s mother also testified that she told K.L.'s mother that she did not believe that K.L. had anything to do with the incident, thereby in essence corroborating her daughter's untruthfulness. Where a defendant succeeds in presenting the evidence he seeks to introduce through other testimony there is no prejudice. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999).

Affirmed.

GLADWIN and ABRAMSON, JJ., agree.